**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GBOLAGADE BABALOLA,** | : | |
| **Plaintiff** | : | **Civil Action No. 1:08-CV-621** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DONEGAL GROUP, INC., and DONEGAL** | : | |
| **MUTUAL INSURANCE CO.,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Before the Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

granted.  (Doc. No. 4.)  The motion has been briefed and is ripe for disposition.  For the reasons

that follow, the Court will grant Defendant's motion to dismiss and will give Plaintiff leave to

file an amended complaint consistent with the following opinion.

## I.    BACKGROUND

Plaintiff Gbolagade Babalola filed the instant action on April 7, 2008, alleging that

Defendants Donegal Group, Inc., and Donegal Mutual Insurance Company (collectively

"Defendants") breached the terms of a homeowners insurance policy (the "policy") that Plaintiff

had purchased from them.  Specifically, Plaintiff claims that Defendants improperly and in bad

faith refused to defend him in a separate lawsuit pending before this Court.

The underlying action for which Plaintiff sought coverage is <u>Bickford v. Babalola</u>, No.

1:07-CV-2169 (hereinafter <u>Bickford</u> or the "underlying action"), brought against him by his

former co-worker Kelly Bickford and her husband Warren Bickford.  Ms. Bickford alleges that

Plaintiff sexually assaulted, molested, and harassed her when both she and Plaintiff were

employed at Waynesboro Hospital in Waynesboro, Pennsylvania.  In the complaint, Ms.

Bickford sets forth various alleged instances of inappropriate sexual touching by and interaction

with Plaintiff, and she describes the overwhelming emotional and psychological impact that

Plaintiff's alleged conduct had on her.  Ms. Bickford states that she is being treated by a family

physician and psychiatrist to help her cope with the mental and emotional trauma she continues

to suffer as a result of Plaintiff's attacks.  The complaint raises claims of: battery, assault,

outrageous conduct causing severe emotional distress, false imprisonment, invasion of privacy,

intentional infliction of emotional distress, negligent infliction of emotional distress, negligence,

and loss of consortium.

Plaintiff maintains that the Bickfords' claims are entirely without merit.  Moreover, he

contends that some of the claims—in particular, those sounding in negligence—should be

covered by his homeowners insurance policy.  Plaintiff tendered the Bickford complaint to

Defendants, but they refused to defend him against the suit, prompting the instant action.

As relief for Defendants' denial of coverage, Plaintiff seeks monetary damages for breach

of contract, treble damages, pre and post judgment interest, punitive damages, and fees and costs.

(Compl. at 4.)  Plaintiff also seeks an order directing Defendants to pay the costs and fees of

defending him in the underlying action "solely for the Bickfords' claims of negligence against

Plaintiff."  (Id.)

Defendants filed the instant motion to dismiss on April 28, 2008.  (Doc. No. 4.)  Before

his briefing obligation had been triggered under the Local Rules, see M.D. Pa. L.R. 7.6, Plaintiff

filed a brief in opposition.  (Doc. No. 6.)  Defendants subsequently filed their brief in support of

the motion and reply brief on May 12 and May 19, 2008, respectively.  Plaintiff sought leave to

file a sur-reply brief (Doc. No. 10), which was granted (Doc. No. 12).  During a case

management conference held on June 2, 2008, Defendants sought leave to supplement their arguments on the motion to dismiss, explaining that they had not been able to adequately address certain matters "newly" raised in Plaintiff's sur-reply brief. Defendants and Plaintiff filed supplemental briefs on July 10, 2008. (Doc. Nos. 18 & 19.)

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). Although the moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the plaintiff has an obligation to allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted); see also Kost, 1 F.3d at 183 (A plaintiff must "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist.") (citation omitted). Moreover, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting Twombly, 127 S. Ct. at 1964-65).

Plaintiff would limit the Court's review solely to the face of his complaint. (Doc. No. 6-2, at 2-3.) The Court, however, has considered the Bickford v. Babalola complaint, as well as

the complete copy of the homeowners insurance policy provided by Defendants (Doc. No. 4-4).

While it is true that review on a Rule 12(b)(6) motion is generally limited to the allegations of

the complaint, a court "may also consider matters of public record, orders, exhibits attached to

the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran

& Berman, 38 F.3d 1380, 1384 n.2 (3d. Cir. 1997); see also In re Burlington Coat Factory Sec.

Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Furthermore, a court may properly rely upon

"documents that form the basis of a claim," that is, any document "integral to or explicitly relied

upon in the complaint." Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).  The

Third Circuit has explained that "considering such a document [at this stage] is not unfair to a

plaintiff because, by relying on the document, the plaintiff is on notice that the document will be

considered." Id.  Thus, the Court's reliance on the complaint in Bickford (a public record) and

the homeowners insurance policy (a document forming the basis of Plaintiff's claim) does not

convert the instant motion to dismiss into one for summary judgment.

## III.   DISCUSSION

As an initial matter, Defendants argue, and Plaintiff concedes, that Donegal Group was

not a party to the homeowners insurance policy and, therefore, owed Plaintiff no duty.  In light

of this concession, the motion to dismiss will be granted as to all claims asserted against Donegal

Group.

The sole remaining defendant, Donegal Mutual, maintains that it has no duty to defend or

indemnify because the Bickfords' claims of negligence against Plaintiff do not fall within the

coverage of the homeowners insurance policy.[1]  Under Pennsylvania law, the question of whether an insurance company has a duty to defend is determined by comparing the allegations contained within the four corners of the underlying complaint against the terms and conditions of the insurance policy at issue.  Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985) (citing Wilson v. Md. Cas. Co., 105 A.2d 304 (Pa. 1954) ("The obligation to defend is determined solely by the allegations of the complaint in the action.")).  If the words of the policy are clear and unambiguous, the Court gives them their plain and ordinary meaning.  Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2004) (citing Pac. Indem. Co., 766 F.2d at 760-61).  On the other hand, if the words are not clear and ambiguous, "and the intention of the parties cannot be discerned from the policy, the court may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract."  Id.

Under Pennsylvania law, an insurer is obligated to defend an insured "whenever an underlying complaint may 'potentially' come within the insurance coverage."  Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (citation omitted).  To determine whether this duty is triggered, a court must:

> first look to the complaint filed against the insured.  "It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend."  Springfield Township v. Indemnity Ins. Co. of North America, 361 Pa. 461, 64

---

[1]  The Court recognizes that the duty to indemnify is a distinct and narrower obligation than the duty to defend.  See Coregis Ins. Co. v. Elizabeth Twp., No. 2:05-cv-582, 2007 U.S. Dist. LEXIS 23574, at * 7 (W.D. Pa. Mar. 30, 2007) (citing Britamco Underwriters, Inc. v. Wiener, 636 A.2d 649, 651 (Pa. Super. Ct. 1994)).  At this stage in the underlying proceedings, it would be premature to address the matter of indemnification.  Accordingly, the Court will limit its discussion to the duty to defend.

> A.2d 761 (1949).  After discerning the facts alleged in the complaint,
> [the court] then must decide whether, if those facts were found to be
> true, the policy would provide coverage.  If it would, then there is a
> duty to defend.

D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. 1986) (citations omitted).  "If a single

allegation of a complaint is potentially covered by a policy, an insurer has an obligation to

defend its insured against all claims until there is no possibility of recovery for a covered claim."

CAT Internet Sys., Inc. v. Providence Washington Ins., 153 F. Supp. 2d 755, 759 (E.D. Pa.

2001) (citing Frog, Switch, 193 F.3d at 746).

    Defendant Donegal Mutual argues that the underlying complaint does not assert a

negligence claim covered by the homeowners insurance policy because Ms. Bickford is not

seeking to recover for "bodily injury" as defined by the policy.  Plaintiff's policy provides

personal liability coverage, subject to certain exceptions, "[i]f a claim is made or suit is brought

against [Plaintiff] for damages because of 'bodily injury' or 'property damage' caused by an

'occurrence' to which this coverage applies."  (Doc. No. 4-4, at 21.)  The term "bodily injury" is

defined in the policy as "bodily harm, sickness or disease, including required care, loss of

services and death that results."  (Id. at 6.)  Under Pennsylvania law, "bodily injury" requires

physical injury: "Pennsylvania courts have soundly rejected the contention that policy definitions

of injury or bodily injury encompass mental or emotional harm."  Coregis Ins. Co. v. City of

Harrisburg, 401 F. Supp. 2d 398, 404 (M.D. Pa. 2005) (quoting Kline v. The Kemper Group, 826

F. Supp. 123, 129-30 (M.D. Pa. 1993)); see also Miller v. Quincy Mut. Fire Ins. Co., No. 03-

1328, 2003 WL 23469293, at * 4-5 (E.D. Pa. Dec. 4, 2003) (Where the plaintiff alleged that she

had been subjected to sexual assault, including the grabbing of her breasts and the touching of

her vaginal area, yet claimed only emotional harm, insurance coverage was not available because

6

the policy allowed for recovery only in instances of "bodily injury.").[2]  Generally, a complaint

alleging only physical manifestations of mental or emotional harm likewise fails to trigger

coverage under a policy insuring against claims brought for "bodily injury."  See Legion

Indemn. Co. v. Carestate Ambulance, Inc., 152 F. Supp. 2d 707, 709 (E.D. Pa. 2001) (Widow's

claim for negligent infliction of emotional distress not covered because "physical symptoms that

result from mental and emotional harm do not constitute 'bodily injury' for purposes of

insurance law.")[3] (citing Zerr v. Erie Ins. Exch., 667 A.2d 237 (Pa. Super. Ct. 1995)).

        A review of the Bickford complaint leads to the conclusion that Ms. Bickford and her

husband do not seek recovery for "bodily injury" as defined in the policy and Pennsylvania law.

Although Ms. Bickford lists some of the manners in which her emotional distress has physically

manifested itself, she does not claim that she suffers from any disease as a result of Plaintiff's

alleged negligence.  See Glikman v. Progressive Cas. Ins. Co., 917 A.2d 872, 873-74 (Pa. Super.

Ct. 2007) (Claim brought by widow suffering from post traumatic stress disorder as a result of

witnessing her husband's death was covered under policy that defined bodily injury to include

"disease.").  Moreover, Ms. Bickford plainly characterizes her injuries as emotional and mental

harm, not "bodily injury," alleging in the complaint that:

   •      Despite her efforts to return to work at the Obstetrical Unit of
          Waynesboro Hospital, [Ms. Bickford] suffered anxiety attacks and

---

    [2]  The definition of "bodily injury" in Miller—"bodily injury, sickness or disease
sustained by a person, including death resulting from any of these at any time," 2003 WL
23469293, at *3—is similar to the definition in the instant policy, "bodily harm, sickness or
disease, including required care, loss of services and death that results" (Doc. No. 4-4, at 6).

    [3]  The Legion policy defined bodily injury as "bodily injury, sickness or disease sustained
by a person, including death resulting from, any of these at any time."  152 F. Supp. 2d at 719
n.8.

> overwhelming fear due to the past sexual assaults, molestation, offensive contact and harassment by [Babalola].
>
> • [Ms. Bickford] has seen her family physician and a psychiatrist to help her cope with and manage the mental and emotional trauma suffered because of the aforementioned attacks.  She has also required consultation and treatment by a cardiologist due to a heart condition that developed as a result of the aforesaid attacks and has suffered other physical manifestations of the emotional trauma caused by [Babalola].
>
> • [Ms. Bickford] experienced pain and suffering and emotional trauma which continues to plague her still today and may do so for the remainder of her life.
>
> • [Ms. Bickford] suffered physical manifestations of this emotional distress.  She experienced nausea, headaches, anxiety attacks, insomnia, severe depression, nightmares, stress, nervousness, anxiety, and a cardiac condition.

(Bickford Compl. ¶¶ 42, 46, 54, 88.)  Although Ms. Bickford describes certain incidents of

offensive touching, these allegations are unaccompanied by a specific assertion of bodily injury.

The burden is on Plaintiff, as the insured, to establish coverage under the policy.

Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir. 2001).  Plaintiff must allege

and then establish an injury covered by the policy.  Having reviewed the Bickford complaint and

the parties' arguments, the Court concludes that there are no allegations of "bodily injury" in the

underlying lawsuit in connection with the negligence and negligent infliction of emotional

distress claims for which Plaintiff now seeks coverage.[4]  Dismissal of the claims against Donegal

Mutual is, therefore, appropriate.

## IV.    CONCLUSION

Because Defendant Donegal Group is was not a party to the homeowners insurance

policy and owed Plaintiff no duty to defend or indemnify, Plaintiff's claims against it will be

dismissed.

Defendant Donegal Mutual will also be dismissed from the action on the basis that Ms.

Bickford's claims of negligence and negligent infliction of emotional distress in the underlying

action were not brought against Plaintiff "for damages because of 'bodily injury,'" as defined by

the policy.

Plaintiff will be given leave to amend his complaint—which currently limits the coverage

he seeks to Ms. Bickford's claims of negligence and negligent infliction of emotional

distress—to include any claim in the underlying action that he believes in good faith may fall

---

[4]  In their filings, the parties have also discussed the policy's Multi Protector Plus
Endorsement ("MPPE"), for which Plaintiff paid an additional premium, and whether it provides
coverage for the underlying claims of false imprisonment and invasion of privacy.  The MPPE
broadens the definition of "bodily injury"—claims for which are generally covered—to include
"personal injury," which the MPPE defines as an

> injury arising out of one or more of the following offenses:
>
> 1.      False arrest, detention or imprisonment, or malicious prosecution;
> 2.      Libel, slander or defamation of character; or
> 3.      Invasion of privacy, wrongful eviction or wrongful entry.

(Doc. No. 4-4, at 34.)
Because Plaintiff's complaint limited the recovery he sought to the Bickfords' claims of
negligence, the Court declines to reach this issue at this time.  The Court will, however, grant
Plaintiff leave to amend his complaint to include any claim in the underlying action that he
believes in good faith may fall within the scope of his policy.

within the scope of his policy.  Plaintiff would be well-advised to state plainly the counts of the underlying complaint for which he believes Defendant Donegal Mutual must provide a legal defense and/or indemnification.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GBOLAGADE BABALOLA,** | : | |
| **Plaintiff** | : | **Civil Action No. 1:08-CV-621** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DONEGAL GROUP, INC., and DONEGAL** | : | |
| **MUTUAL INSURANCE CO.,** | : | |
| **Defendants** | : | |

### ORDER

**AND NOW**, this 26th day of August, 2008, upon consideration of Defendants' motion to dismiss (Doc. No. 4), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendants' motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall have leave to file an amended complaint within ten (10) days of this order.  Should Plaintiff fail to file an amended complaint in a timely manner, the Clerk of Court will be directed to close this case without further notice.

 S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania